REGAN, Judge.
Plaintiffs, Joe and Virginia Lane, the vendees, instituted this suit against the defendants, Elizabeth and Heziakiah Wilson, the vendors, and the Town and Country Real Estate Company, the broker, endeavoring to recover from the Wilsons the sum of $4,000, representing liquidated damages agreed upon in a contract to sell real estate, which the defendant vendors breached by refusing to convey title. Plaintiffs, in addition thereto, prayed for an award of attorney’s fees in the amount of $1,000 plus $40 for expenses .which they incurred as a result of the proposed sale. Plaintiffs, in the alternative, requested that the defendant- realtor be compelled to return the sum of $2,000 which they deposited, with it when the contract -was signed.
The defendant real estate company’s answer consisted of a general denial; it then assumed the position of plaintiff in recon-vention and asserted that the plaintiffs were indebted to it for $870, which amount represented a commission earned under the con *655 tract, together with $500 as an attorney’s fee. A third party action was also instituted by this defendant, in which it contended that its co-defendants, Mr. and Mrs. Wilson, were likewise liable for both the commission and attorney’s fee. In effect, through the reconventional demand and third party action, the realtor sought to recover its commission from either the vendors or the vendees.
The defendant vendors denied the allegations of plaintiff’s petition, and in answer to the third party action insisted that the realtor had obtained a commitment for financing the proposed sale by fraud and misrepresentation which was practiced upon the lending institution and upon both the vendors and the vendees.
From a judgment in favor of the plaintiffs and against the defendant, Town and Country Real Estate Co., in the amount of $2,040,[1] and in favor of the defendant vendors dismissing the plaintiffs’ principal demand, and also dismissing the reconven-tional demand and third party action, only the defendant realtor has prosecuted this appeal.
We concur with the trial judge’s observation, contained in his written reasons for judgment, that the terms of the proposed sale were, to say the least, very confused. However, we believe that the evidence preponderates to the effect that the facts from which this litigation arose are simply these:
On May 4, 1960, plaintiffs and the defendant vendors entered an agreement wherein plaintiffs agreed to buy defendant’s home for $14,500 in cash and to obtain a 7 or 7^/2% homestead loan for the balance of $9,400. When the agreement was signed, plaintiffs deposited $2,000 in cash with the realtor.
A short time thereafter, the vendors were informed by C. H. Schlayer, a salesman representing the realtor that the plaintiffs might not be able to raise the sum of $3100 in cash due in conformity with the agreement. Schlayer suggested to the vendors that they carry a second mortgage for $3100 at 8% interest, payable in monthly installments, and the vendors agreed to this. Thus the following provision was added to the contract:
“Owner to carry $3100 second mortgage at 8%' payable at $54.36 per month until paid.”
Thereafter, the realtor, who arranged for the homestead loan, sent what was designated as a “true copy” of the agreement to purchase to the Guaranty Savings and Homestead Association. This purported true copy did not include the provision relating to the second mortgage. Instead, it revealed that the vendees would actually deposit $5,100 in cash.
Sometime between the signing of the agreement to purchase and the date of the act of sale, the plaintiffs discussed the sale with the vendors and when Wilson explained the contemplated second mortgage, plaintiff, Joe Lane, stated that he was unable to assume the obligation of a second mortgage note. Lane denied this and then made the improbable assertion that Wilson said he did not have to pay the second mortgage note if he did not desire to do so. It should be noted at this point that an inference must be drawn from the record to the effect that Lane’s testimony was inaccurate and vague only because of lack of education, not because he intended to be untruthful.
In any event, Wilson then communicated Lane’s statement to the realtor to the effect that he could not assume the payments required by a second mortgage, but Schlayer assured him that Lane could meet the payments therefor.
*656 The act of sale was to be executed on June 22, 1960 in the office of Elmer Flanders, a Notary Public. However, before visiting the homestead notary, Lane executed the second mortgage in favor of Wilson in the office of Roland Selenberg, an attorney representing the realtor.
Thereafter the litigants proceeded to the office of Flanders where the act of sale was to be passed, and in the course thereof Schlayer cautioned the parties to the act not to mention the existence of a second mortgage in the presence of the homestead notary. The conversation then developed to a point where Wilson asked Schlayer how he was to obtain the other $3100 cash due from Lane. Schlayer then gave him the mortgage note and explained that he could cash it at any bank. These events naturally aroused Mrs. Wilson’s suspicion to such an extent that she refused to go to the act of sale.
Frank Andrews, a vice president of Guaranty Savings and Homestead Association, testified on the trial hereof that the first mortgage loan commitment was made because the homestead was laboring under the erroneous impression that plaintiffs were to pay $5100 in cash. He asserted that the loan application would have been refused had his homestead been informed of the proposed $3100 second mortgage.
The agreement to buy and sell provided in part:
“Should loan required be unobtainable by purchaser, seller or agent before date for passing Act of Sale, this agreement shall then become null and void and agent is authorized to return purchaser’s deposit in full.”
Since the loan of $9,400 was not available at the time the act of sale was to be passed, it became null and void by its very terms.
While it is true that a commitment was made' by the homestead, it was procured by the realtor’s misrepresentation of the terms of the sale, namely, the amount of the cash deposit. The realtor cannot now rely on this commitment procured through its own misrepresentations as a basis for recovering a commission from either the vendors or the vendees. The record reveals, as we have indicated here-inabove, all of the parties to the act had little, if any, formal education or business experience and were thoroughly confused by the realtor’s financial manipulations.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. This is the judgment awarded on rehearing. In the original judgment, the trial judge awarded plaintiff $500 attorney’s fees, which, on reconsideration, he determined was not agreed upon in the 'contract.