SAMUEL, Judge.
Plaintiffs filed this suit for $3,200 against Friendly House Real Estate Co., Inc., a realtor corporation, and Sparkle Homes Corporation, which was engaged in the business of constructing and selling homes. The $3,200 sought allegedly consists of a $1,600 deposit given as earnest money by plaintiffs to a representative of Friendly House in connection with a written agreement to buy and sell entered into by plaintiffs and Sparkle Homes and $1,600 due in liquidated damages under that contract because of the seller’s failure to transfer the property within the time specified in the agreement.
Both corporations answered in the form of general denials. Friendly House reconvened seeking a judgment against plaintiffs for $1,020.96, the commission it would have earned had the sale passed, and attorney’s fees. The claim is based on the contention that plaintiffs were responsible for the breach in failing to apply for financing. Sparkle Homes also reconvened seeking to have the deposit declared forfeited and also seeking $716.15 allegedly expended by that defendant on extra construction ordered by the plaintiffs. In answering the reconven-tional demands, plaintiffs denied all of the allegations except they admitted requesting extras.
*702 After trial there was judgment ordering Friendly House to return plaintiffs’ deposit of $1,630, dismissing plaintiff’s demand for liquidated damages, and rejecting both reconventional demands. Both defendants have appealed. Plainiffs have answered the appeals, re-urging their prayer for liquidated damages.
Although disputed by Howard Bennett, the sole stockholder of both defendant corporations, the evidence preponderates to this effect:
On March 23, 1966, plaintiffs signed the written agreement to buy two lots and a home from Sparkle Homes for $16,300. The house, located at 1923 Delaware Avenue in Kenner, Louisiana, was under construction when the offer was signed. The contract provided the sale was conditioned on the purchasers obtaining a $12,300 loan and that the act of sale was to be passed on or before June 23, 1966.
It is apparent from the record that Howard Bennett assumed the responsibility for obtaining financing for plaintiffs, both in their early twenties. On April 7 Roy Herron gave Bennett a check for $22.50 payable to Eagle Mortgage Company. This was to have covered the cost of processing Herron’s loan application. On behalf of the prospective purchasers, Bennett made a loan application to that mortgage company, which had handled the interim construction financing for Sparkle Homes. Eagle Mortgage ultimately decided it could not handle the loan because of a “tight” money market, and Eagle’s president referred the Herrons to Eureka Homestead, to which they applied for homestead financing on June 23. On June 30 the Herrons were advised by Eureka that their loan application had been accepted.
Passage of the act of sale was set for July 14; but at the last moment the homestead refused to release the money until the following day and the sale was reset for July 18. Subsequently, at a meeting with Bennett and their attorney in the building they had agreed to purchase, plaintiffs (who had complained of defects in construction even prior to the date set for the first sale) pointed out a long list of defects they desired remedied before accepting title. Bennett refused because he did not consider them his responsibility. These defects included: a green discoloration over 15% of the exterior bricks which could not be removed; a “belly” curve in the slab at the front of the house; a wall in the master bedroom that was not on a straight line; nails protruding from the kitchen cabinets; a chip in the formica countertop next to the kitchen sink; mismatched paneling in the living room; an unfinished window in the utility room; and other flaws that only the contractor thought did not warrant any complaint as to quality or workmanship.
When Bennett refused to remedy these conditions, considered unacceptable as quality work even by defendants’ own expert builder, plaintiffs’ attorney wrote a letter in which he formally placed the vendor in default.
In reviewing the record, we can only conclude the contract was not performed due to the active breach by Bennett in his capacity as president of Sparkle Homes Corporation in refusing to correct the numerous construction errors. Bennett excuses his failure to perform timely and deliver the house by June 23 in two ways. First, he argues the extras ordered by plaintiffs prolonged construction. This assertion is not substantiated. The deviation from plans and specifications which might have caused delay beyond the time specified was due to an error in construction by Bennett. When the stove was installed, the oven door would not open fully because a cabinet blocked the opening. As a result, Mrs. Herron chose another unit that could be accommodated in the kitchen. Second, he argues the Herrons refused to cooperate in attempting to obtain financing. This assertion is also refuted. The reason financing was not *703 available on June 23 was that Bennett, who had assumed the responsibility for procuring it, failed to do so.
Obviously, if Sparkle Homes breached the contract by failing to deliver a properly constructed home, it is not entitled to retain the deposit of the purchasers. Nor can the realtor corporation, Friendly House, claim a commission from the purchasers when it impeded performance by failing to obtain financing or to advise plaintiffs a loan was not available in sufficient time for them to act for themselves.
The only question remaining is whether the plaintiffs are entitled to liquidated damages specified in the contract for defendant vendor’s breach in failing to perform. The agreement provides:
“Should loan required be unobtainable by purchaser, seller or agent before date for passing Act of Sale, this agreement shall then become null and void. * * * ”
Under this provision the agreement became null and void after June 23. As plaintiffs and the defendant vendor failed to execute a written extension of the contract, by its own terms it became a nullity without having been executed. Our established law is that a contract to sell realty is only valid when it is in writing. Further, an extension of time for performance beyond the date specified in the contract must also be in writing, otherwise it is invalid. Ezell v. Loucks, La.App., 167 So.2d 452.
The act of sale could not be passed on or before June 23, the contractual date therefor, because there was no financing. Although he had assumed that responsibility on behalf of both defendant corporations, Bennett failed to procure the required financing. In addition, the vendor corporation also was unable to deliver a properly completed home on that date. At that moment the vendor had passively breached the contract by failing to do what it had obligated itself to do. However, before Sparkle Homes could be liable for damages at this point, it would have been necessary for the purchasers to put the vendor in default. LSA-C.C. Art. 1932.
Not only did plaintiffs fail to put Sparkle Homes in default at that time, they also acquiesced in the passive breach by signing a loan application one week after the date for performance had passed. It was not until July, when Bennett refused to remedy the construction defects, that negotiations broke down. Although plaintiffs did ultimately place Sparkle Homes in default on July 18, this did not serve to revive a penalty clause in a contract which, by its specific provisions, had become null and void prior to that date. Paternostro v. Capitano, La.App., 205 So. 2d 894; Lane v. Wilson, La.App., 149 So. 2d 654.
With the sole exception of the exact amount of the deposit, we fully concur in the conclusions reached by the trial court. Although the realtor was ordered to refund to plaintiffs the latters’ “$1,630 deposit”, plaintiffs’ counsel concedes $1,600 is in fact the amount deposited. Accordingly, plaintiffs are entitled to> a return of $1,600 rather than $1,630.
For the reasons assigned, the judgment appealed from is amended only to the extent of changing the amount to be refunded by the defendant, Friendly House Real Estate Co., Inc., to plaintiffs, Mr. and Mrs. Roy B. Herron, from the sum of $1,630 to the sum of $1,600. As thus amended, and in all other respects, the judgment appealed from is affirmed; all costs in this court to be paid by the defendants-appellants.
Amended and affirmed.